# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

SHANE BROOKS,

        Plaintiff(s),

v.

BRIAN WILLIAMS, et al.,

        Defendant(s).

2:12-CV-119 JCM (CWH)

**ORDER**

Presently before the court is defendants Brian Williams *et al.*'s motion to dismiss, or alternatively, motion for summary judgment. (Doc. # 14). *Pro se* plaintiff, Shane Brooks, responded. (Doc. # 17). Defendants replied. (Doc. # 20).

**I.    Background**

Plaintiff alleges that defendants Brian Williams, Tanya Hill, Brian Connett, and Cheryl Burson (collectively, "defendants") placed him in housing cells with "rival white supremist [*sic*] prisoners." (Doc. # 1, 3). Plaintiff claims that this placement led to physical altercations and that "to avoid the danger of being killed," he tried to resolve the issue by requesting cell changes. (*Id.*)

Plaintiff alleges that defendants viewed this as a convenience request and failed to appreciate the "bodily harm and possibl[e] death" plaintiff faced. (Doc. # 1, 4). As a result, plaintiff alleges he was placed in administrative segregation for refusing a "bed move" between September 27, 2010 and October 25, 2010. (*Id.*)

**James C. Mahan**
**U.S. District Judge**

Plaintiff alleges that because he filed grievances regarding his housing situation, defendants retaliated against him by placing him in "death match, battle to the death environments with white supremacist[s]." (*Id.*) And because plaintiff tried to avoid these "hostile situations," defendants placed him in "the hole." (*Id.*).

Plaintiff brings a 42 U.S.C. § 1983 action alleging that he was denied his First Amendment right to redress grievances and his Fourteenth Amendment right to be free of discrimination. In this court's screening order, the court recognized an implicit Eighth Amendment claim for deliberate indifference to safety. (Doc. # 2). Plaintiff sues defendants in their individual and official capacities.[1]

Plaintiff's claims are based on the premise that he is Creole–that is, of African American decent–and defendants have failed to appreciate the danger of housing plaintiff with white supremacists, thus demonstrating deliberate indifference to his safety. Plaintiff further alleges that upon requesting bed moves and filing grievances in order to protect his safety, defendants have retaliated against him.

Plaintiff seeks a declaration that his rights were violated, an injunction enjoining defendants from enforcing a policy that forces rival security threat group members to be housed together, $100/day that plaintiff spent in administrative segregation, and $3,000 for punitive, general, and compensatory damages. (Doc. # 8).

## II.   Legal standard

Defendants submit their motion in the alternative. The court will convert a motion to dismiss into a motion for summary judgment if the parties submit matters outside the pleadings and the court relies on the material in making its decision. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 582 (9th Cir. 1983); Fed.R.Civ.P. 12(d). The court finds treating the instant motion as a motion for summary judgment appropriate.

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[1] Plaintiff did not specifically list defendant Connett in the body of the complaint, although plaintiff listed defendant Connett in the heading on the court's form in accordance with Local Special Rule 2-1. Therefore, it is not clear whether plaintiff is suing Connett in his official or individual capacity or both.

James C. Mahan
U.S. District Judge

- 2 -

1 show that "there is no genuine issue as to any material fact and that the movant is entitled to a
2 judgment as a matter of law." FED. R. CIV. P. 56(a). A principal purpose of summary judgment is "to
3 isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24
4 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

### III. Discussion

Defendants move for summary judgment on the following grounds: (1) state officials cannot be sued in their official capacities for monetary relief under 42 U.S.C. § 1983; (2) plaintiff cannot

**James C. Mahan**
**U.S. District Judge**

- 3 -

establish a 42 U.S.C. § 1983 claim of deliberate indifference against defendants because there was no genuine risk or threat to plaintiff's safety based on his cell assignment, and there was no retaliation; (3) defendants did not personally participate in any alleged violation; (4) defendants are entitled to qualified immunity; and (5) plaintiff's request for injunctive relief is based on a faulty premise.[2] (Doc. # 14, 3:5-13).

### A. State officials cannot be sued in their official capacities for monetary relief

The Eleventh Amendment protects state officials acting in their official capacities against § 1983 suits for damages. *Hale v. State of Ariz.*, 993 F.2d 1387, 1399 (9th Cir. 1993). The rationale behind the extended immunity to such officials is that a civil rights suit against the official would be "no different from a suit against the State itself." *Will v. Michigan, Dept. of State Police*, 491 U.S. 58, 70-71 (1989). Section 1983 does not amount to a congressional abrogation of their immunity because state officials acting in "their official capacity are not 'persons' within the meaning of § 1983." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997)).

To the extent that plaintiff seeks damages against defendants in their official capacities, the court finds dismissal appropriate. 42 U.S.C. § 1997e©.

### B. Plaintiff has not provided sufficient evidence to demonstrate an Eight Amendment or First Amendment violation

#### I. Eighth Amendment - deliberate indifference

Plaintiff's Eighth Amendment claim is premised on his Creole ethnicity and that defendants failed to appreciate the danger of housing plaintiff with white supremacists, thus demonstrating deliberate indifference to his safety.

"A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,' a standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994)

---

[2] The court acknowledges that defendants also moved for dismissal plaintiff's complaint based on his purported failure to exhaust administrative remedies. However, defendants have abandoned this basis for dismissal. (*See* doc. # 20 6:2-10). Thus, the court does not address this argument.

James C. Mahan
U.S. District Judge

- 4 -

(citations omitted). A prison official violates the Eighth Amendment when he is deliberately indifferent "to a substantial risk of serious harm to an inmate." *Id.* at 828.

The Eighth Amendment imposes the duty on a prison official to "take reasonable measures to guarantee the safety of inmates," which includes protecting prisoners from "violence at the hands of other prisoners." *Id.* at 832-33. The official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "[P]rison officials who lack knowledge of risk cannot be said to have inflicted punishment." *Id.* at 844.

Even if there are "underlying facts indicating a sufficiently substantial danger," a prison official cannot be found liable if he or she is unaware of the danger or believed, no matter how unsoundly, that the risk was insubstantial or nonexistent. *Id.* "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.* at 845.

Defendants argue that plaintiff's identity has been a moving target since the beginning of his incarceration. First, and plaintiff admits, that plaintiff entered the state prison system under an alias, "Chris Wright," but in reality his name is Shane Brooks. (Doc. # 14, ex. A, attachment 1, at 3). Between August 2010, and December 2010, plaintiff has claimed his race to be caucasian on one occasion (doc. # 14, ex. A, attachment I, at 8), African American on three occasions (doc. # 14, ex. A, attachment III, at 46-47), and of mixed-race on another occasion (doc. # 14, ex. A, attachment I, 8).

Plaintiff has also claimed to be a member of the Bloods Gang,[3] but has also denied his involvement. (Doc. # 14, ex. A, attachment I, at 3-4, 8, 11; doc. # 14, ex. B, attachment I). Further, plaintiff has advised prison staff on at least six occasions that he has no enemies in the units where he was housed (doc. # 14, ex. A, attachment I, at 8-9), despite the basis of the instant lawsuit.

---

[3] A predominately African American gang.

James C. Mahan
U.S. District Judge

- 5 -

1  Plaintiff has also changed his religious preference from Christian to Hebrew to Israelite. (Doc. # 14,
2  ex. A, attachment 1, at 10; doc. # 14, ex. A, attachment III, at 34).

3       Defendants also argue that plaintiff has not provided any evidence that his safety has been
4  threatened, regardless of his ethnicity. (Doc. # 14, 1-15). The two documented fights that plaintiff
5  has been in, plaintiff either admitted to being the aggressor or denied the existence of a fight. (Doc.
6  # 14, ex. B, attachment II, at 1-2; doc. # 14, ex. A, attachment 1, at 7). To the extent that plaintiff
7  admits to having been in a fight, the fight that he admits to was not with his cell mate. (Doc. # 14,
8  ex. B, attachment III, at 2). Lastly, defendants argue that plaintiff has been advised that he is to notify
9  a prison staff member if he had an enemy or felt unsafe. (Doc. # 14, ex. A, attachment I, at 4).

10       As an initial matter when considering plaintiff's opposition, the court acknowledges that it
11  is *pro se*, which are held to less stringent standards. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A
12  document filed *pro se* is to be liberally construed . . . ."). Plaintiff argues that defendants refused to
13  keep plaintiff separate from rival gang members of caucasian descent. (Doc. # 17, 2). Plaintiff argues
14  that defendants' conduct was purposeful and malicious. (*Id.*).[4]

15       The court finds that plaintiff's preference to be housed with a certain race is simply that, a
16  preference. While plaintiff claims to be of African-American descent with caucasian features,
17  plaintiff has not submitted any evidence to substantiate this claim. Further, defendants have
18  submitted a photo[5] demonstrating plaintiff's fair complexion and blue eyes. (*See* doc. # 14, ex. A,
19  attachment II). Thus, the court finds that plaintiff's preference to be housed with his peers to be
20  based solely on his desire to affiliate with the Bloods. This preference, however, is a *choice*. Any
21  perceived failure by defendants to accommodate this choice does not rise "to a substantial risk of

---

[4] The court finds that the former inmate's declaration–that of Richard Goff– submitted by plaintiff in support of his opposition to be admissible under the leniency afforded to declarations submitted in opposition of a motion for summary judgment. *See Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979); (*see* doc. # 17, ex. A); *see also Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002) (expressing the standard for authentication of evidence on a motion for summary judgment). However, the court finds that the Goff's declaration, (*see* doc. # 17, ex. A), does not raise a genuine issue of material fact that would preclude a finding of summary judgment in favor of defendants on plaintiff's Eighth Amendment claim. Thus, the court does not find it necessary to consider Nevada Department of Corrections Inspector General's declaration in rebuttal. (*See* doc. # 20, ex. A).

[5] The photo is also available on the docket, however, defendants also submitted a color copy of the photo directly to chambers in order for the court to evaluate plaintiff's appearance and skin color.

James C. Mahan
U.S. District Judge

- 6 -

serious harm to an inmate," *Farmer*, 511 U.S. at 828, that is violative of the Eighth Amendment.

It appears that the only consistent aspect of plaintiff's identity is his constant equivocation. This equivocation makes it nearly impossible for a prison official to be aware of the facts "from which the inference could be drawn that a substantial risk of serious harm exists" or for the prison official to "draw the inference." *Farmer*, 511 U.S. 825, at 837. And "prison officials who lack knowledge of risk cannot be said to have inflicted punishment." *Id.* at 844.

Here, the authenticated evidence submitted demonstrates that defendants could not have known of a risk, if one existed. *See also Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002) (expressing the standard for authentication of evidence on a motion for summary judgment). Plaintiff has not been in a documented fight and the fights that plaintiff does admit involvement in, are not fights that arose in "death match, battle to the death environments" as alleged in his complaint. Instead, plaintiff has admitted to being the aggressor or denied that a fight occurred.

Further, plaintiff has not alleged or provided any evidence that he has suffered any harm at the hands of other prisoners. *Id.* at 832-33. And lastly, plaintiff has never been housed with a white supremacist or any other security threat group member. (Doc. # 14, ex. A, ¶ 4). Thus, even if plaintiff is a member of the Bloods security threat group as reported in his presentence report, the court finds that defendants have acted reasonably in addressing plaintiff's housing accommodations. *See Farmer*, 511 U.S. at 844.

The court finds that defendants have demonstrated that plaintiff has failed to make a showing sufficient to establish that his Eighth Amendment right was violated. *See Celotex Corp.*, 477 U.S. at 323–24.

      **ii.    First Amendment - retaliation**

"A prisoner suing prison officials under [§] 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (*per curiam*) (quotation omitted); *see also Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Such claims must be evaluated in a deferential light afforded to prison officials. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "[A] prisoner must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action." *Compare Pratt*, 65 F.3d at 807 (finding insufficient evidence) *with Valandingham v. Bojorquez*, 866 F.2d 1135, 1138-39 (9th Cir. 1989) (finding sufficient evidence). Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989).

A prisoner must demonstrate that his First Amendment rights were actually chilled by the alleged retaliatory action. *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *see also Rhodes*, 408 F.3d at 568 (explaining that, at the pleading stage, a prisoner is not required "to demonstrate a *total* chilling of his First Amendment rights to file grievances and to pursue civil litigation in order to perfect a retaliation claim. Speech can be chilled even when not completely silenced.") (emphasis in original).

Defendants argue that plaintiff's grievance record began on or about September 29, 2010, complaining of his racial classification. (Doc. # 14, ex. A, attachment III, at 48). This was in response to his placement in administrative segregation on September 27, 2010, for refusing a bed move. (Doc. # 14, ex. A, attachment I, at 8). Thus, such placement could not have been in retaliation for exercising his First Amendment right. Plaintiff was placed in disciplinary segregation for the penological purpose of maintaining order and security of the institution after plaintiff delayed, hindered, and interfered with staff. (Doc. # 14, ex. B, attachment IV, at 3-4); *see also Barnett*, 31 F.3d at 815-16.

Upon release to the general population, plaintiff refused a bed move on or about November 22, 2010, and plaintiff was placed in administrative segregation. (Doc. # 14, ex. A, attachment I, at 9). Plaintiff was placed in disciplinary segregation for the penological purpose of maintaining order and security after plaintiff delayed, hindered, and interfered with staff. (Doc. # 14, ex. B, attachment V, at 3-4); *see also Barnett*, 31 F.3d at 815-16.

. . .

Although circumstantial evidence of retaliation may sometimes be provided by the timing of events, *see Soranno's Gasco, Inc*, 874 F.2d at1316, the court finds that there were legitimate, documented reasons for plaintiff's repeated placement in administrative or disciplinary segregation, *see Barnett*, 31 F.3d at 815-16. Thus, the court finds that there was no retaliatory intent on behalf of defendants in their treatment of plaintiff. Further, from the evidence submitted, it does not appear that plaintiff's First Amendment rights were chilled by the alleged retaliatory action. In fact, plaintiff's administrative grievance history has been more active in the years following the instant allegations. (*See* doc. # 14, ex. A, attachments IV, V, VI). Thus, plaintiff's speech has not been chilled following initiation of the instant action.

The court finds that in considering plaintiff's retaliatory allegations in a light deferential to defendants, *see Pratt*, 65 F.3d at 807, the court finds that plaintiff has failed to make a showing sufficient to establish that his First Amendment right was violated. *See Celotex Corp.*, 477 U.S. at 323–24.

**C.    Some defendants did personally participate in the alleged violations**

For a defendant to be held liable under § 1983, the plaintiff must demonstrate that the defendant personally participated in the alleged denial of rights; in other words, there can be no liability under § 1983 based on *respondeat superior* or other theory of vicarious liability. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 663 n.7 (1978); *see also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Liability under §1983 attaches only upon personal participation by a defendant in the constitutional violation. *Taylor v. List*, 880 F.3d 1040, 1045 (9th Cir. 1989). A supervisor may be liable for constitutional violations of subordinates, however, if the supervisor participated in, directed, or knew of the violations and failed to act to prevent them. *Id.*

The defendants that plaintiff seeks to recover from are Williams, the warden of Southern Desert Correction Center; Hill, a Caseworker III; Connett, the Deputy Director of Prison Industries; and Burson, an associate warden. Burson received and processed plaintiff's grievances; Hill responded to plaintiff's informal grievance # 2006290294; Williams responded to plaintiff's first level grievances; and Connett responded to plaintiff's second level grievances.

**James C. Mahan**
**U.S. District Judge**

- 9 -

1   However, since the court has found that there was no Eighth Amendment violation, these
2   defendants' personal involvement does not create liability under § 1983. The court finds that
3   defendant Burson did not have discretion in her position such that she could make decisions that
4   infringed on plaintiff's rights.

**D.     State defendants are entitled to qualified immunity**

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity applies "regardless of whether the government official's error is mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (citation omitted).

In addressing qualified immunity, a court must determine (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right, and (2) whether that right was "clearly established." *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 967 (9th Cir. 2010) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), modified by *Pearson*, 555 U.S. 223). Addressing the two prongs of the test in this order is often beneficial, but it is not mandatory. Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Cmty. House, Inc.*, 623 F.3d at 967; *see also Pearson*, 555 U.S. 235.

Defendants argue that it would not have been clear to defendants that their actions in denying plaintiff's request to have his racial classification changed without a claimed threat to his safety could result in a constitutional violation.

Here, since plaintiff has failed to establish that his Eighth and First Amendment rights were violated, defendants are not liable even without addressing whether qualified immunity attaches. However, the court, in fairness, address whether qualified immunity applies if plaintiff had demonstrated a constitutional violation.

First, the court finds defendants' argument incomplete. Defendants fail to address plaintiff's claim that it was not just their failure to change his racial classification, but also their failure to appreciate the danger their actions placed plaintiff in. Further, plaintiff's requests to have his racial classification changed was often accompanied by a statement regarding the dangerousness of housing inmates of different races together; however, these requests did not contain a claimed threat to *his* safety. (*See* doc. # 14, ex. A, attachment IV).

The court first addresses whether this right was "clearly established". *See Cmty. House, Inc.*, 623 F.3d at 967. The court finds that it was not. There is no constitutional requirement that inmates of like race be housed in cells together. If anything this is done for the penological interest to the extent that it ensures a greater degree of safety. (Doc. # 14, ex. A, ¶ 5). This, of course, would include protecting plaintiff from "death match, battle to the death environments." However, it is not clearly established that, without facts that demonstrate that plaintiff's safety is threatened, defendants had to change plaintiff's racial classification or house him with African American inmates.

Thus, the court finds that qualified immunity protects defendants from liability for civil damages because their conduct did not violate a clearly established right of which a reasonable person would have known. *See Pearson*, 555 U.S. at 231.

**E.     The injunctive relief sought is not appropriate**

Plaintiff requests that the court abolish the prison's institutional policy of forcing rival security threat group members to be housed together. (Doc. # 8, 11). However, defendants have submitted authenticated evidence that no such policy exists. (Doc. # 14, Ex. A, ¶ 5); *see also Orr*, 285 F.3d 764. Thus, the court finds that there is nothing to abolish and plaintiff's request for injunctive relief is denied.

**IV.     Conclusion**

Plaintiff has failed to satisfy his burden to establish that a genuine issue of material fact exists as to whether his First and Eighth Amendments were violated. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Plaintiff has not pointed to any facts that "require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc.*, 809 F.2d at 631.

**James C. Mahan**
**U.S. District Judge**

- 11 -

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants Brian Williams *et al.*'s motion for summary judgment (doc. # 14) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDER that the clerk of the court enter judgment in favor of defendants.

DATED December 20, 2012.

**UNITED STATES DISTRICT JUDGE**